IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NAJEE ANTHONY SHAREEF,

      Plaintiff,

v.

SELECT PORTFOLIO SERVICING,
INC., *et al.*,

      Defendants.

CIVIL ACTION FILE NO.

1:25-cv-2697-MHC-JKL

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

Plaintiff Najee Anthony Shareef challenges the non-judicial foreclosure of property located at 5661 Rutland Trace, Lithonia, Georgia 30058 (the "Property") and his subsequent eviction from the Property.  [*See generally* Doc. 6 (amended complaint).]  The case is before the Court on the following motions:

- Defendants AG Investment Holdings, LLC ("AG Investment") and Timothy Walls's motion to dismiss Plaintiff's amended complaint [Doc. 7];

- Plaintiff's motion to supplement the amended complaint [Doc. 11];

- Defendant JPMorgan Chase Bank, N.A.'s ("Chase") motion to dismiss the amended complaint [Doc. 35];

- Plaintiff's "Motion For Sanctions Against Scott R. Hoopes, Hoopes and Mills Law Firm And Referral For Ethical Violations" [Doc. 43];

- Plaintiff's "Motion To Reinstate Plaintiff into Subject Property for Undue Hardship And Harm" [Doc. 55];

- Plaintiff's "Renewed Motion For Preliminary Injunction, Reinstatement, and to Compel Documentary Evidence Under FRCP 65, 60(b), 34, and 37" [Doc. 60]; and

- Defendant AG Investment and Mr. Walls's "Emergency Motion to Discharge Lis Pendens" [Doc. 62].

For the reasons that follow, it is **RECOMMENDED** that the motions to dismiss be **GRANTED**, and that Plaintiff's motions be **DENIED**. Further, it is **RECOMMENDED** that the motion to discharge *lis pendens* be **DENIED**.

## I.    PLAINTIFF'S REPEATED CITATIONS TO NON-EXISTENT CASES

Before turning to the pending motions, the Court first addresses Plaintiff's rampant use of non-existent caselaw and mis-citations to actual decisions, which presumably is the result of his use of generative artificial intelligence.[1]  Some

---

[1] Indeed, AG Investment and Mr. Walls have performed an analysis of Plaintiff's response to their motion to dismiss, which indicated 98% of his brief was AI-generated text.  [*See* Doc. 12-1.]

2

examples of non-existent authorities include the following from the amended complaint: "*Lakin v. Daniel*, 313 Ga. App. 782, 723 S.E.2d 56 (2012)"; "*Robert J. Adams & Assoc. v. Williams*, 250 Ga. App. 147, 550 S.E.2d 680 (2001)"; "*Lovin v. Brown*, 289 Ga. 195, 710 S.E.2d 146 (2011)"; and "*Chancey v. Price*, 314 Ga. App. 732, 725 S.E.2d 860 (2012)." [*See* Doc. 6 at 11, 16, 20]. Examples of mis-citations to actual cases include citations to "*Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 290 Ga. App. 72, 717 S.E.2d 209 (2011)," which actually appears at 276 Ga. 848, 583 S.E.2d 849 (2003) and "*Yarbrough v. Kirkland*, 303 Ga. App. 777, 694 S.E.2d 387 (2010)," which appears at 249 Ga. App. 523, 548 S.E.2d 670 (2011).[2] [*See* Doc. 6 at 4, 14.] He has also mis-quoted statutes, including O.C.G.A. § 44-14-162(a) for the proposition that a foreclosure sale "shall take place at the courthouse of the county in which the land lies, between the hours of 10:00 a.m. and 4:00 p.m." [Doc. 8 at 6.] That statute says no such thing.

In the Court's Order of August 25, 2025, the presiding District Judge noted that Plaintiff had cited to a non-existent case, "*Weitz Co., LLC v. MacKenzie House, LLC,* 276 Ga. 824 (2003)," in a motion. [*See* Doc. 49 at 12 n.6 (citing Doc. 18 at 5).]

---

[2] Though *Yarbrough* is an actual case, it does not, contrary to Plaintiff's assertion otherwise, address the elements of an intentional infliction of emotional distress claim. Because of this, the Court can only assume that the erroneous citation to *Yarbrough* was not a mere scrivener's error.

But even after being called out for citing fictional authority, Plaintiff has since doubled-down. For example, in his reply in support of his motion for sanctions, filed just two weeks later on September 9, 2025, he cited "*Top Entm't, Inc. v. Torrejon*, 351 F.3d 1270, 1277 (11th Cir. 2003)," which the Court has been unable to locate. Three days later, in his motion for reinstatement, he provided even more inaccurate citations: "*Baptiste v. State*, 229 Ga. App. 483 (1997)", "*Post v. State*, 298 Ga. 106 (2015)", "*In re Estate of Allen*, 260 Ga. App. 766 (2003)", "*King v. Baker*, 109 Ga. App. 629 (1964)", "*Scoggins v. APN Props.*, 331 Ga. App. 523 (2015)", and "*Cotton v. State*, 211 Ga. App. 651 (1993)." [Doc. 55 at 7-8.] Then in his reply in support of the motion for reinstatement, he cited yet another non-existent case, "*Target Media Grp. v. Ohio Sec. Ins. Co.*, No. 1:14-CV-1439, 2015 WL 419879 (N.D. Ga. Jan. 30, 2015)." [*See* Doc. 57 at 4.]

This stops now. Even though the Court must give liberal construction to pro se filings, "a liberal standard is not the same as no standards—pro se litigants are nonetheless required to 'conform to procedural rules.'" *United States v. Stephens*, No. 23-CIV-80043, 2025 WL 2840746, at *3 (S.D. Fla. Aug. 7, 2025) (quoting *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002)). Importantly, Plaintiff's "pro se status does not shield him from the 'same duty of candor to the court as imposed on any other litigant.'" *Id.* (quoting *Kendrick v. Sec'y, Florida*

*Dep't of Corr.*, 2022 WL 2388425, at *3 (11th Cir. 2022)).  "Citing imprecise, non-existent legal authority breaches this duty of candor."  *Id.*  **Plaintiff is therefore warned in the strongest possible terms that this Court will summarily strike any future filings in this or any other case in which he is a party that contain citations to non-existent authorities or mis-citations to actual authority, and may impose sanctions, including dismissal, for failure to follow a court order.**

## II.    BACKGROUND

### A.    Allegations in the Amended Complaint

On March 2, 2007, Plaintiff and Monica Shareef executed a Security Deed in favor of Chase, to secure a loan in the original principal amount of $650,000 (the "Security Deed").  [*See Doc.* 35-1 at 25-44 (Security Deed).[3]]  On September

---

[3] Chase has attached documents that were recorded in the Superior Court of DeKalb County, including the applicable Security Deed and "Assignment of Security Deed."  [Doc. 35-1 at 25-45.]  AG Investment and Mr. Walls have also attached a Deed Under Power pertaining to the foreclosure sale of the Property on January 7, 2025.  [Doc. 7-2.]  The Court ordinarily must convert a motion to dismiss to a motion for summary judgment if it considers materials outside of a complaint.  Fed. R. Civ. P. 12(d); *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005).  But it need not make this conversion if "the attached document is (1) central to the plaintiff's claim and (2) undisputed."  *Day*, 400 F.3d at 1276.  A document is "undisputed" when its authenticity is unchallenged.  *Id.*  Here, the Security Deed, the Assignment of Security Deed, and Deed Under Power are central to Plaintiffs claims and the authenticity of the documents is not challenged, and thus the Court may consider them without converting the motion to dismiss to one for summary judgment.  Additionally, the Court may take judicial notice of public records, including real estate records, without

30, 2011, Chase assigned the Security Deed to "The Bank Of New York Mellon Trust Co., N.A. F/K/A The Bank Of New York Trust Co., N.A. As Trustee For Multi-Class Mortgage Pass-Through Certificates, Chaseflex Trust Series 2007-2" ("BONYM"). [*Id.* at 45.] It appears that at some point, Plaintiff defaulted on the loan.[4] [*See* Doc. 7-2 at 3 (Deed Under Power).]

On January 7, 2025, Defendant Select Portfolio Servicing, Inc., acting on behalf of BONYM, conducted a nonjudicial foreclosure sale of the Property. [Doc. 6 at 6; Doc. 7-2 at 2-4.] AG Investment purchased the Property at the sale. [Doc. 7-2 at 2.] After acquiring the Property, AG Investment, through its attorney Mr. Walls, demanded possession of the Property from all current occupants, including Plaintiff and Monica Shareef. [Doc. 6 at 7; Doc. 7-3 at 2-17 (March 5, 2025 letter demanding possession of Property).[5]] When the occupants did not

---

converting a motion to dismiss to a motion for summary judgment. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999) (noting that the court may take judicial notice of public records); *Minnifield v. Wells Fargo Bank*, No. 1:17-CV-4458-TWT-JKL, 2018 WL 3640421, at *1 n.1 (N.D. Ga. June 8, 2018).

[4] In the amended complaint, Plaintiff refers to another loan he originated with IndyMac Bank in 2005. [*See* Doc. 6 at 4.] The amended complaint does not explain the relevance of that loan to the one at issue here.

[5] This letter is central to the allegations in the amended complaint and its authenticity is not in dispute. Thus, the Court may properly consider it without converting AG Investment and Mr. Walls's motion to dismiss to one for summary judgment.

surrender possession of the Property, AG Investments, again through Mr. Walls, brought a dispossessory action in the Magistrate Court of DeKalb County on March 6, 2025.  [Doc. 6 at 61 (dispossessory warrant).]  On March 24, 2025, AG Investment filed affidavits of service for the dispossessory action, indicating that service on Plaintiff, Monica Shareef, and "all other occupants" had been effectuated by posting a notice on the front gate of the Property and mailing a copy of the same to them.  [Doc. 7-5 at 2-10 (affidavits of service).[6]]  Neither Plaintiff (nor anyone else) filed an answer.  [*See* Doc. 7-6 at 2 (Application for Writ of Possession and Writ of Possession).[7]]  On April 21, 2025, a DeKalb County Magistrate Judge issued a writ of possession, authorizing the DeKalb County Marshal to remove all occupants from the Property.  [*Id.*]

At around 9:00 a.m. on May 2, 2025, DeKalb County Marshals arrived at the Property to evict Plaintiff.  [Doc. 6 at 8.]  Plaintiff told the Marshals that the Property "was subject to ongoing litigation," and as he looked for

---

[6] The dispossessory warrant, affidavits of service and associated orders appointing process servers were filed in the Magistrate Court of DeKalb County, and thus the Court may take judicial notice of them.  They are also central to the allegations in this case and their authenticity is not in dispute.

[7] The application for the writ of possession and subsequent writ of possession were also filed in the Magistrate Court of DeKalb County; thus, the Court may take judicial notice of them.

7

"documentation on his phone" one of the officers "became impatient and threatened Plaintiff with limited time to produce the document." [*Id.*] According to Plaintiff, the Marshals did not present a warrant to him or his adult son, who was also inside the residence.  [*Id.*]  As Plaintiff went inside the residence "to retrieve the relevant legal documents and ensure the safe removal of his children," two of the Marshals pushed Plaintiff into the residence and "attempted to arrest him."  [*Id.*]  And then when Plaintiff was sitting down and posed no threat, one of the Marshals tased him.  [*Id.*]  He was then detained in a "squad car" while "Craigslist movers" removed personal property from the residence, valued at over $3 million.  [*Id.* at 9.]  Plaintiff contends that he was "incarcerated" and "suffered bodily harm."  [*Id.*]  He was released on a personal recognizance bond on May 3, 2025.  [*Id.* at 74.]

### B.    Plaintiff's Claims

Plaintiff's amended complaint names six defendants:  Chase, AG Investment, Mr. Walls, SPS, IndyMac, and DeKalb County.  [*See* Doc. 6.]  Based on the foregoing allegations, Plaintiff asserts the following claims:

- Count I: Violation of Due Process Under the Fourteenth Amendment against Chase, AG Investment, Mr. Walls, SPS, IndyMac, and DeKalb County;

- Count II: Violation of 42 U.S.C. § 1983 against Chase, AG Investment, Mr. Walls, SPS, IndyMac, and DeKalb County;

- Count III: Securities Fraud against Chase and SPS arising out of the alleged improper assignment of Plaintiff's loan;

- Count IV: Elder Abuse against Chase, AG Investment, Mr. Walls, SPS, IndyMac, and DeKalb County;

- Count V: "Property Laundering" against AG Investment;

- Count VI: "Facilitating Legal Fraud" against Mr. Walls

- Count VII: "Illegal Foreclosure" against Chase, SPS, and IndyMac

- Count VIII: Wrongful Eviction against AG Investment and DeKalb County;

- Count IX: Trespass to Property against AG Investment and DeKalb County;

- Count X:  Conversion against Chase, AG Investment, SPS, and DeKalb County;

- Count XI: "Violation of Fourth Amendment Rights" against DeKalb County; and

- Count XII: "Interstate RICO Violations (18 U.S.C. § 1961 et seq.)" against Chase, AG Investment, Mr. Walls, SPS, and IndyMac.

9

Plaintiff voluntarily dismissed DeKalb County from the suit pursuant to Federal Rule 41(a)(1)(A)(i).  [Docs. 19 and 20.]  Defendants SPS and IndyMac, neither of which has been properly served with the amended complaint, have not appeared in the case.  The remaining defendants—Chase, AG Investment, and Mr. Walls— have filed the motions to dismiss which are currently before the Court.

## III.    MOTIONS TO DISMISS

### A.    Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth the plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555.  Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do."  *Id.* In evaluating a complaint, courts should disregard any allegations that are mere legal conclusions.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (discussing *Iqbal* and *Twombly*).  Further, if assuming the truth of the factual allegations of the amended complaint, there is a dispositive legal issue that

precludes relief or if it is based on a meritless legal theory, dismissal is warranted. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *see also Brown v. Crawford Cnty.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

In the case of *pro se* litigants, a complaint is to be "liberally construed" and "must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted). However, this lenient standard does not shield a *pro se* litigant from complying with minimum requirements of the Federal Rules of Civil Procedure, and a court need not accept as true legal conclusions or unwarranted factual inferences in a *pro se* complaint. *Collins v. Fulton Cnty. Sch. Dist.*, No. 1:12-CV-1299-ODE-JSA, 2012 WL 7802745, at *6 (N.D. Ga. Dec. 26, 2012) (citing *Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002) and *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006)). So, while a *pro se* complaint need not contain "detailed factual allegations," it must still "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted).

### B.    Shotgun Complaint

AG Investment, Walls, and Chase argue that the amended complaint should be dismissed because it is a shotgun complaint. [Doc. 7-1 at 8-9; Doc. 35-

1 at 6-8.]  A complaint may qualify as a shotgun pleading if it (1) asserts "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," (2) is composed of "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," (3) does "not separat[e] into a different count each cause of action or claim for relief," or (4) "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).  "In the special circumstance of non-merits dismissals on shotgun pleading grounds," a district court must "sua sponte allow a litigant one chance to remedy such deficiencies" before dismissing the complaint.  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).  "But once the plaintiff has been given fair notice of the specific defects in his complaint and a meaningful chance to fix them, dismissal with prejudice is proper if the plaintiff files 'an amended complaint afflicted with the same defects.'"  *Herrera v. Biden*, No. 21-12476, 2022 WL 3649788, at *3 (11th Cir. Aug. 24, 2022) (quoting *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018)).

12

Here, the amended complaint exhibits all the hallmarks of a shotgun complaint. The complaint is 27 pages long and includes over 100 unnumbered paragraphs and 12 counts. [*See generally* Doc. 6.] It is replete with vague assertions, including many instances in which it alleges that Defendants "may" have violated the law. [*See, e.g., id.* at 13 (alleging that the assignment of the loan "may violate the Securities Act of 1933 and the Securities Exchange Act of 1934"); *id.* at 14 (alleging that Defendants' "pattern of conduct may constitute elder abuse"); *id.* at 15 (alleging that AG Investment's purchase of the Property "may constitute a violation of state money laundering statutes"); *id.* at 17 (alleging that Mr. Walls's "conduct may constitute common law fraud, negligent misrepresentation, and a violation of his professional and ethical duties"; alleging that the foreclosure "may also constitute a violation of the Fair Debt Collection Practices Act (FDCPA) . . . if SPS is considered a 'debt collector' under the statute and engage in deceptive of unfair practices").] The amended complaint also lumps multiple defendants into single counts, which creates confusion about what actions he contends each defendant actually took. And within several of these counts, Plaintiff vaguely asserts multiple causes of action. [*See, e.g., id.* at 17-18 (alleging in context of wrongful foreclosure claim (Count

13

VII) that SPS "may" have violated the FDCPA).]  Likewise, at the beginning of each of the 12 counts, Plaintiff incorporates all previous allegations by reference.

Chase, AG Investment, and Mr. Walls ask the Court to dismiss the amended complaint.  [Doc. 7-1 at 9; Doc. 36-1 at 8.]  But that is not relief the Court can grant at this juncture based solely on the ground that it is a shotgun pleading.  "When faced with a shotgun pleading, the trial court, whether or not requested to do so by the party's adversary, ought to require the party to file a repleader."  *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006)).  As a result, the remedy that Defendants seek—dismissal of the complaint because it is a shotgun pleading—is not appropriate.  Even so, the Court declines to order repleader because Plaintiff's claims are frivolous, so even if the Court directed Plaintiff to amend his complaint to restate his claims, they would still fail as a matter of law.  Accordingly, the Court declines to recommend dismissal of the complaint on the grounds that it is a "shotgun" pleading and, instead, addresses the merits of the amended complaint.

### C.    Chase's Motion to Dismiss

The Court first takes up Chase's motion to dismiss.  Plaintiff asserts the following claims against Chase:  Violation of Due Process Under the Fourteenth Amendment (Count I); Violation of 42 U.S.C. § 1983 (Count II); Securities Fraud

(Count III); Elder Abuse (Count IV); Illegal Foreclosure (Count VII); Conversion (Count X); and Interstate RICO Violations (Count XII). [*See* Doc. 6.] Chase makes several arguments as to why these claims should be dismissed, including: the Fourteenth Amendment and § 1983 claims fail because Chase is not a state actor; the securities fraud claim should be dismissed because Plaintiff did not plead the elements of the claim with specificity under Rule 9; the elder abuse claim fails because there is no private right of action under Georgia law; the wrongful foreclosure claim fails because Chase did not foreclose on the Property; the conversion claim fails because Chase is not alleged to have taken possession or control of any property or failed to return any property that Plaintiff demanded ; and the RICO claim fails because Plaintiff has not alleged the essential elements of such a claim. [*See generally* Doc. 35-1.] Chase also argues that all the claims fail as a matter of law because they are based on a theory that there was some defect in the assignment, but under Georgia law, Plaintiff lacks standing to challenge the assignment. [*Id.* at 9-11.] This last argument is dispositive, so the Court starts—and ends—there.

Each of Plaintiff's claims against Chase is premised on challenges to the validity of an assignment of the underlying loan or security deed. But Georgia law is clear that "homeowners lack standing to bring such claims to the extent

15

they are premised on challenges to the validity of an assignment of the mortgage or security deed whose assignment the homeowner was not a party." *Karva v. First Magnus Fin. Corp.*, No. 1:19-CV-2007-AT-JSA, 2019 WL 11499526, at *12 (N.D. Ga. Sept. 12, 2019), *report and recommendation adopted*, 2019 WL 11499535 (N.D. Ga. Oct. 1, 2019); *see Ames v. JP Morgan Chase Bank, N.A.*, 298 Ga. 732, 739 (2016) ("What the debtor cannot do is dispute the assignment; that may normally be done only by the assignor, because the debtor is not a third-party beneficiary of the assignment as a whole and particularly is not intended to directly benefit from the transfer of the power of sale."); *see also Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1252 (11th Cir. 2015) (rejecting borrower's claims based on, among other things, allegations that the assignment of a security deed was deficient because it was forged, improperly attested, and identified the wrong party); *Ames v. J.P. Morgan Chase Bank, N.A.*, 623 F. App'x 983, 986–87 (11th Cir. 2015) ("Because [plaintiffs] lack standing to challenge the validity of the mortgage assignment, Georgia law also prohibits them from bringing other claims that 'are premised on; that challenge."); *Richard v. Bank of Am.*, No. 1:19-CV-5459-MLB-JKL, 2020 WL 9601850, at *5 (N.D. Ga. Dec. 2, 2020) (collecting cases holding that a borrower "cannot base either tort or fraud claims on alleged deficiencies in the assignment of her mortgage loan or security deed"), *report and recommendation*

16

*adopted sub nom. Young v. Bank of Am.*, 2021 WL 3073271 (N.D. Ga. Apr. 27, 2021);

*Coast v. Bank of New York Mellon Tr. (N.Y.BMT), N.A.*, No. 1:13-CV-991-WSD, 2013

WL 5945085, at *4 (N.D. Ga. Nov. 6, 2013) ("To the extent Plaintiffs argue that the

Assignment is defective or fraudulent, Plaintiffs were not parties to the

Assignment and therefore they do not have standing to challenge its validity.").

Because each of the claims that Plaintiff asserts against Chase is predicated on the

notion that the assignment of his mortgage was invalid, the claims fail to state a

plausible claim for relief and should be dismissed.    Accordingly, it is

**RECOMMENDED** that Chase's motion to dismiss be **GRANTED**.[8]

### D.    AG Investment Holdings and Timothy Walls's Motion to Dismiss

The Court next takes up AG Investment and Mr. Walls's motion to dismiss.

Plaintiff asserts the following claims against both AG Investment and Mr. Walls:

Violation of Due Process Under the Fourteenth Amendment (Count I); Violation

of 42 U.S.C. § 1983 (Count II); Elder Abuse (Count IV); Trespass to Property

(Count IX); Conversion (Count X); and "Interstate RICO Violations" (Count XII).

---

[8] Alternatively, even if Plaintiff could somehow show standing, the claims against Chase fail because Chase assigned the Security Deed to BONYM in 2011, nearly ***14 years*** before the foreclosure took place.  [*See* Doc. 35-1 at 45.]  As a matter of common sense, then, there is no plausible basis to believe that Chase was involved in any manner with the foreclosure at issue here.

He also asserts the following claims solely against AG Investment: Property Laundering (Count V); Wrongful Eviction (Count VIII).  And he asserts a Facilitating Legal Fraud (Count VI) claim against Mr. Walls only.

AG Investment and Mr. Walls move to dismiss all those claims.  [Doc. 7-1.]  They argue that the claims under the Fourteenth Amendment and § 1983 arising out of the non-judicial foreclosure sale fail because neither of them qualifies as a "state actor."  [*Id.* at 9-13.]  As to the elder abuse claim, they contend that there is no private right of action for elder abuse arising out of the purported wrongful foreclosure of property.  [*Id.* at 13-15.]  Next, with regard to the "property laundering" and RICO counts, they argue that Plaintiff has not alleged a pattern of racketeering.  [*Id.* at 15-18.]  As to the claim of "Facilitating Legal Fraud" against Mr. Walls individually, Walls argues that Plaintiff has not pled fraud with requisite particularity under Rule 9(b) because he does not identify any representation upon which he relied to his detriment or any injury that was proximately causes by such reliance.  [*Id.* at 18-20.]  Mr. Walls also argues that Plaintiff's fraud claim necessarily fails because it is based on the filing of a dispossessory action and obtaining a writ of possession, "which were all done through proper legal channels."  [*Id.* at 20.]  As to the remaining claims of wrongful eviction, trespass, and conversion against AG Investment, it argues that

those claims fail because the dispossessory action was properly filed and the subsequent eviction was carried out pursuant to a valid writ of possession. [*Id.* at 21.] Finally, AG Investment and Mr. Walls contend that Plaintiff's amended complaint is barred by res judicata because all the claims were already ruled on in the dispossessory action. [*Id.* at 23-24.]

To the extent that the claims against AG Investment and Mr. Walls are based on the purported invalidity of the foreclosure sale itself, the claims are all barred for the same reason that they fail against Chase—*i.e.,* Plaintiff lacks standing to challenge the assignment of the underlying loan or security deed. Thus, all the claims should be dismissed to the degree they are based on AG Investment's or Mr. Walls's purchase of the Property at the non-judicial foreclosure sale.

Likewise, to the extent that Plaintiff's claims are based on his eviction from the Property following the foreclosure sale, the claims also fail. As will be discussed, this Court lacks subject matter jurisdiction to hear claims that challenge the dispossessory action under the *Rooker-Feldman* doctrine. [9]

---

[9] The *Rooker-Feldman* doctrine—named for two Supreme Court cases, *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)—prevents federal district courts from hearing what are essentially appeals from state court decisions. *See Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1284 (11th Cir. 2018). Though AG Investment

Alternatively, even if the claims were not jurisdictionally barred, each fails on its merits.

> **1.    *Rooker-Feldman* Bars Plaintiff's Claims to the Extent They Collaterally Challenge the Dispossessory Action**

Because the *Rooker-Feldman* doctrine raises a question about this Court's subject matter jurisdiction, the Court is "obliged to examine" it first. *Target Media*, 881 F.3d at 1284.   "The *Rooker-Feldman* doctrine eliminates federal court jurisdiction over those cases that are essentially an appeal by a state court loser seeking to relitigate a claim that has already been decided in a state court." *Id.* at 1281.  Under the doctrine, "federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court."  *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).  The Eleventh Circuit has applied the doctrine to hold that federal courts lack authority to review, reverse, or invalidate a state court's judgment in a dispossessory action.  *See, e.g., Carr v. U.S. Bank as Trustee for TBW Mortg. Backed*

---

and Mr. Walls did not move to dismiss this case for lack of subject matter jurisdiction, this Court has "an obligation to examine sua sponte [its] own jurisdiction over a case, notwithstanding the contentions of the parties."  *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020); *see also Linares v. Armor Corr. Health Servs., Inc.*, 591 F. App'x 924 (11th Cir. 2015) (affirming sua sponte dismissal of pro se plaintiff's complaint for lack of subject matter jurisdiction under *Rooker-Feldman*).

*Tr. Series 2006-6*, 793 F. App'x 971, 973 (11th Cir. 2019); *accord Powers v. Gables Residential Realty Tr.*, No. 1:22-CV-3358-MHC-CMS, 2022 WL 18780977, at *2 (N.D. Ga. Oct. 20, 2022) (finding that court lacked jurisdiction to review or set aside state court judgment in dispossessory action), *report and recommendation adopted*, 2022 WL 18780993 (N.D. Ga. Nov. 10, 2022).

*Rooker-Feldman* applies only where the state proceedings ended before the federal action was commenced. *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (11th Cir. 2013). A state proceeding has ended "(1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, (2) if the state action has reached a point where neither party seeks further action, and (3) if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated." *Id.* (citation omitted). "In the second scenario, a state proceeding has ended if the losing party allows the time for appeal to expire." *Johnson v. Brock*, No. 20-14088, 2021 WL 3028765, at *2 (11th Cir. July 19, 2021) (citing *Nicholson v. Shafe*, 558 F.3d 1266, 1275 (11th Cir. 2009)). Meanwhile, a federal action is commenced "when the original federal complaint is filed, not when any amended complaint is filed." *Reese-Lennell v. Shore*, No. 3:17-CV-724-J-34PDB, 2018 WL 1748103, at *4 (M.D. Fla. Mar.

6, 2018), *report and recommendation adopted*, 2018 WL 1738734 (M.D. Fla. Apr. 11, 2018). "Accordingly, if a federal court has properly invoked subject matter jurisdiction at the time of the initial federal complaint, the Rooker-Feldman doctrine cannot spring into action and eliminate jurisdiction merely because an amended complaint is filed." *Lozman*, 713 F.3d at 1072 n.3.

Only claims that were raised in the state court and those "inextricably intertwined" with the state court judgment are subject to *Rooker-Feldman*. *Casale*, 558 F.3d at 1260; *see also Target Media*, 881 F.3d at 1286 ("We . . . consider whether a claim was either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment."). "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Casale*, 558 F.3d at 1260 (quotations and citations omitted). But even if a claim is inextricably intertwined with the state court's judgment, the doctrine does not apply if the plaintiff had no reasonable opportunity to raise his federal claim in the state proceedings. *Id*. "Thus, the class of federal claims that [the Eleventh Circuit has] found to be 'inextricably intertwined' with state court judgments is limited to those raising a question that was or should have been properly before the state court." *Target Media*, 881 F.3d at 1286.

22

Here, the DeKalb County Magistrate Court issued the writ of possession on April 21, 2025. [Doc. 7-6 at 2.] Under Georgia law, Plaintiff had seven days— that is, until April 28, 2025—to file an appeal. *See* O.C.G.A. § 44-7-56(a), (b)(1); *Radio Sandy Springs, Inc. v. Allen Rd. Joint Venture*, 311 Ga. App. 334, 335 (2011) ("Any judgment by the trial court shall be appealable pursuant to [O.C.G.A.] Chapters 2, 3, 6, and 7 of Title 5, provided that any such appeal shall be filed within seven days of the date such judgment was entered."). The docket of the DeKalb County Magistrate Court[10] shows that Plaintiff did not file an appeal of the decision by April 28. The failure to file a timely appeal precludes appellate review. *See Harris v. Rsrv. at Hollywood LLC*, __ Ga. App. __, 920 S.E.2d 163, 164 (Ga. Ct. App. 2025). Thus, the state court proceedings ended at that time.[11] Plaintiff then filed this action on May 14, 2025, over two weeks after his deadline to appeal expired. [Doc. 1.] As of the date that Plaintiff commenced this action,

---

[10] The docket for the Magistrate Case, *AG Investment Holdings, LLC v. Najee Anthony Shareef, et al.*, No. 25D06448 is accessible via the Magistrate Court's online portal at: https://portal-gadekalb.tylertech.cloud/portal/Home/WorkspaceMode?p=0.

[11] After the time to appeal had expired, Plaintiff moved to "dismiss" the dispossessory warrant in the Magistrate Court, which was denied nunc pro tunc June 10, 2025. Because this belated attempt to set aside the writ of possession occurred after the deadline to appeal had passed, the case had still ended for purposes of *Rooker-Feldman* as of April 28, 2025.

the Magistrate Court's issuance of the writ of possession was a final order and the proceedings had ended.

The claims that Plaintiff asserts against AG Investment and Mr. Walls are, in essence, an attempt to invalidate that writ of possession and can succeed only if the state court's writ of possession were nullified. In Count I, Plaintiff alleges that AG Investment and Mr. Walls "deprived Plaintiff of his property rights in the Subject Property without providing constitutionally adequate notice and an opportunity to be heard." [Doc. 6 at 10.] In Count II, he similarly alleges that the eviction was "legally deficient" and the writ of possession invalid. [*Id.* at 11.] Likewise, in Count VIII, he asserts a claim for "wrongful eviction" on the theory that the "eviction notice lacked essential legal requirements, including judicial signatures, response dates, and a proper date of service, rendering legally insufficient to serve as a basis for eviction." [*Id.* at 19.] The *Rooker-Feldman* doctrine bars these claims because "[a] review of the procedures employed by the state court . . . would necessarily have a direct impact on the state court's judgment and decision[.]" *Christophe v. Morris*, 198 F. App'x 818, 825 (11th Cir. 2006).

The same goes for other claims. Count IV, the "Elder Abuse" claim, presupposes that the eviction was unlawful. [Doc. 6 at 14.] In Count V--the so-

called "Property Laundering" count—Plaintiff contends that AG Investment engaged in "property laundering" by purchasing the Property at foreclosure and then "attempting to evict Plaintiff based on a legally deficient notice." [*Id.* at 16.] In Count VI, Plaintiff alleges that Mr. Walls filed unspecified "fraudulent documentation" that enabled the eviction to take place. [*Id.* at 16-17.] Counts IX and X, the "Trespass to Property" and "Conversions" claims, likewise are based on the purported unlawfulness of the eviction. [*Id.* at 20-21.]] Finally, in Count XII, Plaintiff alleges that AG Investment and Mr. Walls were part of an overarching racketeering enterprise through which they were able to evict Plaintiff from the Property. [*Id.* at 25.] Again, this claim calls into question the legal sufficiency of the writ of possession and the procedures in the state court dispossessory proceedings—matters that Plaintiff could have raised in the dispossessory proceeding. Thus, to the extent that Plaintiff bases his claims against AG Investment and Mr. Walls on his eviction from the Property, the claims are barred by *Rooker-Feldman*.

25

### 2. Even If This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims Relating to the Eviction, They Fail on Their Merits

To the extent that Plaintiff's claims against AG Investment and Mr. Walls based on his eviction are not barred by the *Rooker-Feldman* doctrine, they fail on their merits. The Court takes up each claim in turn.

### a. Fourteenth Amendment and § 1983 (Counts I and II)

"Section 1983 provides that every person who, under color of state law, subjects or causes to be subjected any person within the jurisdiction of the United States 'to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'" *Thompson v. Wells Fargo Bank, N.A. for Nat'l City Mortg. Cap. Tr. 2008-1, Mortg. Pass-Through Certificates, Series 2008-1*, No. 1:11-CV-3710-AT-AJB, 2012 WL 13012508, at *5 (N.D. Ga. Dec. 21, 2012) (quoting 42 U.S.C. § 1983). "Section 1983 is not a source of substantive federal rights but instead merely provides a method for vindicating against state actors federal rights that are conferred elsewhere." *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The Fourteenth Amendment—which Plaintiff invokes here--provides that "[n]o State shall . . . deprive any person of life, liberty,

or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

To state a claim under Section 1983, a plaintiff "must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  *Am. Manufs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).  "The requirement that the deprivation be made 'under color of state law' means that the deprivation must be made by a state actor."  *Charles v. Johnson*, 18 F.4th 686, 694 (11th Cir. 2021) (citations omitted).  The "under color of state law" element cannot be satisfied by "merely private conduct, no matter how discriminatory or wrongful."  *Am. Manufs.*, 526 U.S. at 50; *see also Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a "state actor" for [S]ection 1983 purposes.").  There are "three primary tests the Supreme Court has used to determine whether state action exists: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test."  *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993) (citing *Nat'l Broad. Co. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988) ("*NBC*")).

> The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state."  The state compulsion test limits state action to instances where the government "has coerced

27

or at least significantly encouraged the action alleged to violate the Constitution. The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise."

*Id.* (quoting *NBC*, 860 F.2d at 1026-27).

Here, Plaintiff does not satisfy any of the foregoing tests. Simply put, AG Investment and Mr. Walls are a private entity and individual who merely obtained the Property at a non-judicial foreclosure sale and then sought dispossession under Georgia law. This is not enough to make them state actors. *Thompson*, 2012 WL 13012508, at *6 (collecting cases). Thus, Counts I and II should be dismissed as to AG Investment and Mr. Walls.

### b.    Elder Abuse (Count IV)

In Count IV, Plaintiff alleges that all Defendants, including AG Investment and Mr. Walls, "may" have committed elder abuse in violation of O.C.G.A. § 16-5-102 and O.C.G.A. § 30-5-2. [Doc. 6 at 14.] This claim is frivolous. "O.C.G.A. § 16-5-102 is a criminal statute that provides no private right of action." *Phelps v. T-Mobile USA, Inc.*, No. 1:20-CV-4102-SCJ, 2021 WL 6113734, at *6 (N.D. Ga. Aug. 6, 2021). Meanwhile, O.C.G.A. § 30-5-2, simply states the legislative purpose of the Georgia Disabled Adults and Elder Persons Protection Act, which "is to provide protective services for abused, neglected, or exploited disabled adults and elder persons." But even assuming Plaintiff meant to invoke the Disabled

28

Adults and Elder Persons Protection Act more generally, there is also no private right of action under the Act. *See Est. of Ellis v. Am. Advisors Grp., Inc.*, No. 21-13270, 2023 WL 115856, at *5 (11th Cir. Jan. 6, 2023).[12]  Count IV, therefore, should be dismissed.

### c.    "Property Laundering" (Count V)

Plaintiff's "property laundering" claim also is due to be dismissed. Plaintiff alleges that AG Investment's purchase of the Property at foreclosure "may constitute a violation of state money laundering statutes . . . and potentially federal money laundering statutes if the funds involved were derived from specified unlawful activities and involved interstate commerce."  [Doc. 6 at 15.] He also contends that AG Investment's "acquisition of the Subject Property was part of a scheme to legitimate illegally obtained property, knowing or willfully disregarding the fraudulent and unlawful nature of the foreclosure process."  [*Id.* at 16.]  He further alleges that AG Investment "by attempting to evict Plaintiff

---

[12] *Ellis* further held that an alleged wrongful foreclosure did not qualify as "abuse" under the Act because it did not involve "the willful infliction of physical pain, physical injury, sexual abuse, mental anguish, unreasonable confinement, or the willful deprivation of essential services."  *Ellis*, 2023 WL 115856, at *5 (citing O.C.G.A. § 30-5-3(1)).  Thus, to the degree that Count IV is based on the alleged wrongful foreclosure—and by extension the eviction—the claim fails for this additional reason.

based on a legally deficient notice, further demonstrated an intent to conceal the illegal nature of its acquisition of the Subject Property." [*Id.*]  This claim fails because it is derivative of Plaintiff's assertion that there was a defect in the assignment of the underlying loan or security deed, which as discussed above, he lacks standing to challenge.  Nor could AG "conceal" anything about the acquisition of the property or the eviction since the foreclosure purchase is reflected in the Deed Under Power that is publicly filed in the records of the DeKalb County Superior Court and the eviction proceedings were also carried out in court.  [*See* Doc. 7-2, 7-4, 7-5, 7-6.]  Count V, therefore, should be dismissed.

### d.    "Facilitating Legal Fraud" (Count VI)

Plaintiff alleges in conclusory fashion that Mr. Walls "filed fraudulent documentation, including but not limited to documents related to foreclosure, assignments, or eviction notices, despite the clear defects in the chain of title, the lack of proper assignments, and the ongoing litigation." [Doc. 6 at 17.]  Plaintiff asserts that "[t]his conduct may constitute common law fraud, negligent misrepresentation, and a violation of his professional and ethical duties." [*Id.*]

To prevail on a fraud claim under Georgia law, a plaintiff must prove the following five elements: (1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance

by the plaintiff, (5) and damage to the plaintiff. *Johnston v. Correale,* 612 S.E.2d 829, 832 (Ga. App. 2005). Federal Rule of Civil Procedure 9(b) requires that when fraud is alleged, "a party must state with particularity the circumstances constituting fraud." "Particularity means that 'a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Atkins v. McIntee*r, 470 F.3d 1350, 1357 (11th Cir. 2006) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002)). "The particularity requirement of Rule 9(b) . . . still applies to pro se litigants, even though courts generally will allow pro se litigants some leniency." *Shabazz v. Bank of Am.*, No. 1:10-CV-0813-RWS-AJB, 2010 WL 11647333, at *12 (N.D. Ga. Oct. 26, 2010), *report and recommendation adopted*, 2010 WL 11647469 (N.D. Ga. Nov. 29, 2010).

The amended complaint is bereft of factual content that supports any of the elements of a fraud claim. But even more fundamentally, Plaintiff cannot allege in good faith that Mr. Walls made a false representation upon which Plaintiff relied to his detriment. The sole communication that Mr. Walls made with Plaintiff appears to be the March 5, 2025 letter demanding possession of the Property. Obviously, Plaintiff did not rely on anything in that letter to his

31

detriment—in fact, he has vehemently opposed what Mr. Walls told him. Accordingly, Plaintiff's fraud claim is due to be dismissed.

### e.  Wrongful Eviction, Trespass, and Conversion (Counts VIII, IX, and X)

Plaintiff's claims for wrongful eviction, trespass, and conversion also fail because they are derivative of Plaintiff's assertion that the foreclosure was somehow unlawful. *Bray v. PHH Mortg. Corp.*, No. 1:22-CV-00815-SEG-JEM, 2024 WL 3387434, at *7 (N.D. Ga. June 11, 2024) (recommending dismissal of wrongful eviction claim that was "derivative of" plaintiff's wrongful foreclosure claim), *report and recommendation adopted*, No. 1:22-CV-0815-SEG-JEM, 2024 WL 4647824 (N.D. Ga. Sept. 16, 2024).  In addition, the claims fail because the amended complaint is devoid of factual content that supports any of the essential elements of those claims.  "To state a claim for wrongful eviction, Plaintiff must allege facts showing that [the defendant] failed to follow the proper procedures for dispossessory actions." *Sturm v. Bank of Am., N.A.*, No. 2:13-CV-00146-RWS, 2014 WL 2515393, at *3 (N.D. Ga. June 4, 2014).  Here, there is no factual content alleged that supports such a claim.

Nor has Plaintiff stated a plausible claim of trespass because following the foreclosure sale and issuance of the writ of possession, he did not have a lawful possessory interest in the Property.  *See Goia v. CitiFinancial Auto*, 499 F. App'x

32

930, 937 (11th Cir. 2012) ("For a plaintiff to raise a claim for trespass under § 51-9-1, they must show that the trespasser refused to leave the house or realty after being asked to leave or that they interfered with the plaintiff's possessory interest in the realty.").

Lastly, "[u]nder Georgia law, to state a claim for conversion, a plaintiff must show: (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *Taylor v. Wells Fargo Bank Nat'l Ass'n*, No. 1:21-CV-05331-JPB, 2022 WL 3700097, at *1 (N.D. Ga. Apr. 26, 2022) (citing *Stockton v. Shadwick*, 362 Ga. App. 779, 788 (2022)). Here, the amended complaint lacks factual content that suggests AG Investment or Mr. Walls took any personal property or that they are in actual possession of the property. Nor does Plaintiff allege that he demanded the return of the property or that either AG Investment or Mr. Walls refused to return the property. Thus, the conversion claim should be dismissed. *See id.* at *2 (dismissing conversion claim where complaint was devoid of allegations that established each element).

### f.    "Interstate RICO Violations" (Count XII)

In Count XII, Plaintiff asserts a civil RICO claim under federal law, predicated on federal mail fraud, wire fraud, securities fraud, extortion, and

money laundering offenses. [Doc. 6 at 23-24.] "Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Id.*, at 1316–17. In addition, "a plaintiff must allege facts demonstrating that the defendant engaged in a pattern of racketeering activity." *Joseph v. Bank of Am., N.A.*, No. 1:11-CV-3909-JEC-AJB, 2012 WL 13012507, at *7 (N.D. Ga. July 9, 2012), *report and recommendation adopted*, 2012 WL 13013436 (N.D. Ga. July 27, 2012) (citing *Lockheed Martin Corp. v. Boeing Co.*, 357 F.Supp.2d 1350, 1372 (M.D. Fla. 2005)). The federal RICO statute defines "racketeering activity" to include "certain acts that are indictable under specific criminal statutes set forth in 18 U.S.C. § 1961(1)." *Id.* "A 'pattern of racketeering activity' consists of two or more 'predicate acts' of racketeering activity occurring within a ten-year period." *Id.* (quoting 18 U.S.C. § 1961(5)). To survive a motion to dismiss in a civil RICO case, then, a plaintiff must allege facts that plausibly suggest that the defendant committed two qualifying predicate acts. "This requires that a

34

plaintiff allege facts that support each statutory element of a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." *Id.* (citing *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004)).

Here, Plaintiff merely references multiple criminal statutes in a threadbare manner, which fails to satisfy the plausibility standard articulated in *Twombly* and *Iqbal* or the heightened pleading standard required for fraud claims under Federal Rule of Civil Procedure 9(b). What's more, the purported predicate acts underlying his claims are based on meritless challenges to the assignment of the loan or security deed at issue and the collateral attack on a final writ of possession. Accordingly, Plaintiff's civil RICO claim should be dismissed.

### E.    Summary

For all these reasons, it is **RECOMMENDED** that Chase's and AG Investment and Mr. Walls's motions to dismiss be **GRANTED**.

## IV.    MOTION TO SUPPLEMENT COMPLAINT

On July 8, 2025, Plaintiff moved to supplement his complaint. [Doc. 11.] AG Investment and Mr. Walls oppose the motion on the grounds that the information that Plaintiff seeks to add was available when he filed the initial complaint and permitting supplementation would unduly prejudice Defendants

because Plaintiff has used generative AI to draft voluminous, meritless documents.  [Doc. 22.]

Rule 15(d) provides that "on motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  A supplemental pleading is an appropriate vehicle by which to "set forth new facts in order to update the earlier pleading, or change the amount or nature of the relief requested in the original pleading."  *Lussier v. Dugger*, 904 F.2d 661, 670 (11th Cir. 1990).

The standard applicable to a motion for leave to supplement under Rule 15(d) is similar to the standard for motions for leave to amend under Rule 15(a) (which is discussed by both parties).  "Leave to supplement should be freely given as justice so requires, but courts should not grant motions to supplement when there is 'undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment.'"  *Nance v. Ricoh Elecs., Inc.*, No. 1:06-cv-2396-RWS, 2008 WL 926662, at *6 (N.D. Ga. Apr. 4, 2008), *aff'd*, 381 F. App'x 919 (11th Cir. 2010) (quoting *Amick v. BM & KM, Inc.*, 275 F.Supp.2d 1378, 1381 (N.D. Ga. 2003)).

36

Here, the Court finds that Plaintiff's motion to supplement the complaint should be denied because doing so would be futile and would needlessly prolong these proceedings to the prejudice of the defendants.  He contends that after he filed his original complaint, he discovered that the affidavits of service showing that Plaintiff, his wife, and "all other occupants" were served with a summons and dispossessory warrant were not properly signed or notarized.  [Doc. 11 at 2.]  But this proposed supplementation is futile because this is simply a round-about way of challenging the underling writ of possession, and as discussed above, the *Rooker-Feldman* doctrine divests this Court of jurisdiction to hear such a challenge.

Similarly, Plaintiff seeks to supplement the complaint to complain that a DeKalb County Magistrate Judge deprived him of "due process" and had a "conflict" because she denied a motion to dismiss and a motion for recusal in June 2025.  [Doc. 11 at 3.]  These rulings, however, are completely irrelevant to the underlying claims in this case.  Thus, there is no need to supplement the complaint to add these allegations.[13]

---

[13] Of course, were Plaintiff seeking to bring a claim for damages against the magistrate judge herself, such a claim would be is futile because it is barred by judicial immunity.  *See Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) ("Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction.") (cleaned up).

Plaintiff also seeks to add allegations concerning his discovery that AG Investment and Mr. Walls are "marketing" the Property but have not discussed that the Property is the subject of ongoing litigation and has a "clouded title." [Doc. 11 at 3.] Again, these allegations are immaterial to the underlying claims in this case and the Court is not aware of any cause of action Plaintiff has standing to bring based on the marketing of the Property. Adding these facts, then, would unnecessarily increase the cost of defense and prejudice Defendants.

Plaintiff also seeks to add what purports to be screenshot of an empty room in the Property, which he contends shows that personal property was wrongfully removed during the eviction. [Doc. 1 at 3.] But this is not new information. In the amended complaint, Plaintiff already alleged that the personal property was removed from the residence. [*See* Doc. 6 at 21.] Supplementation is thus unwarranted.

Finally, Plaintiff seeks to supplement the amended complaint to add detail about misconduct that the DeKalb County marshals allegedly engaged in. [Doc. 11 at 3.] But Plaintiff does not even begin to explain how this information—which occurred before he filed his complaint—somehow became known to him after he initially filed this action. Nor does it appear that this additional information gives

rise to a new claim for relief, especially since DeKalb County has been dismissed from this action.  Supplementation is therefore unnecessary.

For these reasons, it is **RECOMMENDED** that the motion to supplement be **DENIED**.

## V.    MOTION FOR REINSTATEMENT

On September 12, 2025, Plaintiff filed his "Motion to Reinstate Plaintiff Into Subject Property For Undue Hardship and Harm."  [Doc. 55.]  In it, he asks the court to "reinstate" him to "possession" of the Property by granting either a preliminary injunction under Rule 65 or "relief from any underlying state judgment due to fraud, void proceedings, and violations of due process" under Federal 60(b).  [*Id.* at 1.]

This motion is due to be denied.  For starters, the presiding District Judge has twice denied Plaintiff's requests for temporary injunctive relief.  [*See* Doc. 13 (explaining why Plaintiff was not entitled to preliminary injunctive relief); Doc. 49 at 8-12 (same).]  Nothing in the motion for reinstatement compels a finding that the Court should now take a different approach.

Meanwhile, Plaintiff's invocation of Rule 60(b) is misplaced.  That Rule allows this Court to grant relief from its own judgment, not the judgment of a state court.  *McKenna v. United States*, No. 8:11-CV-954-T-23MAP, 2011 WL

1749422, at *1 (M.D. Fla. May 6, 2011) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)).  At bottom, Plaintiff's request is a collateral attack on the state court dispossessory action, which as explained above, is barred by *Rooker-Feldman*.  Thus, it is **RECOMMENDED** that the motion for reinstatement be **DENIED**.

## VI.    RENEWED MOTION FOR INJUNCTIVE RELIEF

On October 27, 2025, Plaintiff filed a two-page "Renewed Motion For Preliminary Injunction, Reinstatement, And To Compel Documentary Evidence Under FRCP 65, 60(b), 34, and 37." [Doc. 60.]  The motion itself is disjointed and difficult to follow, but it seems to be a fourth bite at the apple.  Nothing in the motion warrants reconsideration of the previous two denials of injunctive relief.  Accordingly, it is **RECOMMENDED** that Plaintiff's renewed motion for injunctive relief be **DENIED**.[14]

---

[14] In the motion, Plaintiff refers vaguely to Defendants' alleged failure to respond to discovery.  [Doc. 60 at 1.]  Under the Court's Local Rules, the discovery period does not begin until 30 days after the appearance of the first defendant by answer unless the parties mutually consent to begin earlier.  LR 26.2(A), NDGa.  No defendant has appeared by answer yet and there is no indication the parties mutually consented to begin discovery earlier.  Thus, no Defendant is presently under any obligation to respond to discovery requests.  Similarly, there is no basis to compel discovery responses.

## VII.  MOTION FOR SANCTIONS

Plaintiff moves for sanctions against Scott R. Hoopes, counsel for AG Investment and Mr. Walls, as well as his law firm, under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.  [Doc. 43.]  According to Plaintiff, he "seeks to hold Scott Hoopes accountable for his role in deceiving this Court and the DeKalb County Magistrate Court, obstructing justice, and enabling Defendants' violations, which continue weekly and cause ongoing harm to Plaintiff."  [*Id.* at 2.]  He variously accuses Mr. Hoopes and his law firm of "fraudulent" affidavits of service and "defective" notarizations, which led to the issuance of a "defective" writ of possession.  [*Id.* at 2-3.]  This motion is due to be denied.

As a procedural matter, Plaintiff cannot obtain sanctions via Rule 11 because nothing suggests that he followed the rule's safe-harbor provision, which requires the movant to give the other party 21 days to correct the alleged sanctionable conduct.  *See* Fed. R. Civ. P. 11(c)(2).  Because Plaintiff did not provide such an opportunity to those Defendants or their counsel, the motion for sanctions is denied to the extent that it is based on Rule 11.

Meanwhile, a "court may impose sanctions under § 1927 against an attorney who 'multiplies the proceedings in any case unreasonably and vexatiously.'"  *Silva v. Pro Transp., Inc.*, 898 F.3d 1335, 1340 (11th Cir. 2018)

41

(quoting 28 U.S.C. § 1927). Neither Mr. Hoopes nor his law firm has done anything of the sort here. Mr. Hoopes's conduct in this case has been entirely appropriate. Likewise, Plaintiff's accusations of wrongdoing lack any evidentiary support whatsoever and nothing contained in any of the exhibits to Plaintiff's motion—including the affidavits of service from the dispossessory proceeding, the dispossessory warrant and summons, and the application for a writ of possession—supports Plaintiff's accusations.

For these reasons, it is **RECOMMENDED** that motion for sanctions be **DENIED**.

## VIII.  MOTION TO CANCEL *LIS PENDENS*

AG Investment and Mr. Walls move the court to discharge a *lis pendens* filed in DeKalb County Lien Book 2833, page 311. [Doc. 62; *see also* Doc. 34 (unrecorded copy of *lis pendens*).] Those defendants contend that the *lis pendens* is chilling the marketability of the Property and causing them continued harm. [Doc. 62 at 2.] They argue that Plaintiff's claims challenging the writ of possession or the dispossessory action are barred by principles of *res judicata* and *Rooker-Feldman*, and that there are no live theories that would effect a change in title of possession of the Property. [*Id.* at 4-7.] Thus, the Court should enter an order cancelling the *lis pendens*. [*Id.* at 7.]

"During the pendency of [a] civil action, the court may enter an order canceling the lis pendens, on the court's own motion or on the motion of a party to the underlying action, upon a showing that the real property is no longer involved in the pending action."    O.C.G.A. § 44-14-610(b).    There is ample authority that a federal district court may order a state court to cancel a *lis pendens*. *See, e.g., Bradley v. Branch Banking & Tr. Co.*, No. 3:15-CV-00012-TCB, 2015 WL 11455759, at *2 (N.D. Ga. Aug. 24, 2015) (directing Fayette County Superior Court to cancel *lis pendens* following dismissal of plaintiff's claims with prejudice); *Prophetical Word Church of Georgia, Inc. v. Regions Bank*, No. 1:13-CV-1983-CAP-ECS, 2013 WL 12382316, at *7 (N.D. Ga. Oct. 9, 2013) (recommending, following dismissal of action, dissolution of *lis pendens* recorded in DeKalb County Superior Court), *report and recommendation adopted*, 2013 WL 12382353 (N.D. Ga. Nov. 1, 2013).

But here's the rub.    The Court is sympathetic to AG Investment and Mr. Walls's argument, but even if it grants their motion to dismiss, this action will continue against other, unserved defendants who have not yet appeared—specifically, SPS and IndyMac.    And in his prayer for relief, Plaintiff seeks to set aside the foreclosure and declare him the owner of the Property.    [Doc. 6 at 28.] Thus, to conclude that the Property is no longer involved, the Court will have to

43

address the merits of the claims against the remaining defendants. Unfortunately for AG Investment and Mr. Walls, "[t]he validity of a notice of lis pendens, however, is not generally determined after the merits of the claims on which it is based have been decided." *Spinola v. Akaranta*, 375 Ga. App. 194, 199 (2025), *reconsideration denied* (Apr. 24, 2025), *cert. denied* (Sept. 16, 2025). As a result, the Court is constrained to find that the motion to cancel the *lis pendens* is premature. Thus, it is **RECOMMENDED** that the motion be **DENIED**.

## IX.    CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendants' motions to dismiss [Docs. 7 and 35] be **GRANTED** and their motion to discharge *lis pendens* [Doc. 62] be **DENIED**, and that Plaintiff's motions to supplement the complaint, for sanctions, to reinstate him into the Property, and for preliminary injunction [Docs. 11, 43, 55, and 60] be **DENIED**.

IT IS SO RECOMMENDED, this 5th day of November, 2025.

_____
JOHN K. LARKINS III
United States Magistrate Judge

44